[No. 1093.]

THE STATE OF NEVADA, RESPONDENT, *v.* CARSON CITY SAVINGS BANK, APPELLANT.

MONEY AT INTEREST, SECURED BY MORTGAGE, IS TAXABLE.—The constitution of this state declares that all property shall be taxed, except mines and other property for certain enumerated purposes. The legislature cannot exempt any taxable property not enumerated. Money at interest, secured by mortgage, is taxable.

DEPOSITS IN BANKS—How ASSESSED.—Deposits received in the regular course of the bank's business become its own property, and are assessable to the bank.

CONSTITUTION—TAXING MONEY AT INTEREST, SECURED BY MORTGAGE, IS NOT DOUBLE TAXATION.—*Held*, upon a full review of the authorities, that the taxing of money at interest secured by mortgage, when the property mortgaged is taxed, is not double taxation, and is not in violation of the constitution of this state.

TENDER OF PORTION OF TAXES DUE—PENALTIES.—The tender of a portion of the money due for taxes, made on condition that it be received for the whole, does not relieve a party from the payment of the entire penalties upon the full amount.

Appeal from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*A. C. Ellis* and *Trenmor Coffin*, for Appellant:

I. Under the revenue law of this state mortgages are not taxable. Mortgages, by the express terms of the statute, are not subject to taxation. (Stat. 1877, 175.) This statute was undoubtedly enacted by the legislature upon the theory that the character of property, which is embraced under the name mortgage, under the revenue system of this state, would otherwise be taxed once, and that the taxation of property or values, represented or covered by the term mortgages, if taxed *" eo nomine,"* would be double taxation. That the use of the word "mortgages," in the act of 1877, was intended to cover money at interest, secured by mortgage, is palpable. Such language, when employed by the legislature, is always to be taken in the ordinary and popular sense. (*Caples* v. *C. P. R. R. Co.*, 6 Nev. 265; 43 Cal. 332.) Any other construction would overthrow the plain intent of the statute and render the clause in question nugatory. (*Torreyson* v. *Board of Examiners*, 7 Nev. 19; *Le Roy* v. *Chabolla*, 1 Saw. 456.)

II. Any taxation of mortgages, when the property mortgaged is taxed, is double taxation and a violation of the constitution of Nevada. Any tangible property within the state of Nevada is subject to *one* and only *one* annual tax. (*State* v. *Earl*, 1 Nev. 394; *Savings and Loan Society* v. *Austin*, 46 Cal. 415; *People* v. *Hibernia Bank*, 51 Cal. 243; *State* v. *Collector of Chambersburg*, 37 N. J., L. R. 258; *Osburn* v. *N. Y. & N. H. R. R. Co.*, 40 Conn. 491.)

III. Under the revenue system of this state all bank deposits must be taxed to the depositor, and the assessor, being a public officer, the law will presume that he has performed his duty, and has assessed all of the savings deposits of appellant to the depositors to whom such deposits belonged, and to assess such depositors again to appellant, under the name of "money at secured by mortgage," or under any other name or pretense, would be a glaring case of double taxation. The tender

pleaded was sufficient, and the treasurer should have taken the amount of the taxes due upon the other taxable property of appellant—should have segregated the legal from the illegal demands of the state. (*Bank of Mendocino* v. *Chalfant*, 51 Cal. 369.)

*H. F. Bartine*, District Attorney of Ormsby County, and *Robert M. Clarke*, for Respondent :

I. Moneys at interest, secured by mortgage, are subject to taxation. The provision relied on by appellants refers to mortgages only. A mortgage is an entirely different thing from a sum of money at interest and secured by a mortgage. The intention to exempt property from taxation is not to be presumed; such exemptions being in derogation of the common rights of the citizen, are strictly construed and never extended by implication. (Cooley on Tax. 52, 56; Hilliard on Tax., p. 74; 10 Harris, Penn. 496; 8 Ind. 328.) It is unreasonable to suppose that the legislature intended to single out and exempt a particular class of credits, and those the best secured and most valuable of any, leaving all others still subject to taxation, and with the burden upon them vastly increased by this very exemption. If such was the intent, the provision is unconstitutional and wholly void. The obvious intention of the law is to prevent the taxation of mortgages themselves, as a separate and distinct species of property, which would be a duplication of taxes upon the same individual, and "double taxation" in its objectionable sense. Taking this view, the provision is not only constitutional, but also in perfect accord with the other parts of the revenue law of the state.

II. The taxation of moneys at interest, secured by mortgage, is not double taxation. The mortgaged property does not represent the credit, nor does the right to collect the money depend upon the mortgage. Even if such were the case double taxation will only avoid a tax when the duplication is direct—as where the same property is twice taxed in the hands of the same person. No such condition exists in this case, for the appellant has not even paid *one* tax. The word "property," as employed in article ten of the constitution, is not restricted in its meaning to things tangible, but is used in

its broadest sense, and covers things intangible as well. With the exception of the case in 51 Cal., none of the authorities cited by counsel for appellant sustain the doctrine that taxability depends upon tangibility. These credits are property, of value to the owners, and requiring the protection of the state to quite as great an extent as property of any other kind. To exempt them would increase the rate of taxation upon every other species of property, and be a vicious departure from the equality and uniformity prescribed by the constitution. (Cooley on Tax. 161; *Augusta Bank* v. *Augusta*, 36 Maine, 259; *Trustee* v. *McConnel*, 12 Ill. 138; *People* v. *Worthington*, 21 Ill. 173; *McGregor* v. *Vanpel*, 24 Iowa 440; 3 Ohio St. 1, 28; *People* v. *McCreery*, 34 Cal. 432; *People* v. *Whartenby*, 38 Cal. 461; 43 Cal. 331; *Sav. and Loan Society* v. *Austin*, 46 Cal. 416; *State* v. *Earl*, 1 Nev. 394; *State* v. *First Nat. Bank*, 4 Nev. 348; *Drexler* v. *Tyrrell*, 15 Nev. 114.)

III. There is nothing in the revenue law of this state requiring bank deposits to be taxed to the depositor. On the contrary it is very clearly implied that the person, firm, corporation or association having possession of the deposits shall be answerable for the tax thereon. (Stat. 1881, 64.) Moneys deposited with a bank, unless specially deposited, become the property of the bank, and should be listed to the bank for taxation. (*Bank of Columbus* v. *Hines*, 3 Ohio St. 66.)

IV. The plea of tender is wholly insufficient. Less than one-half of the amount of the tax was tendered as payment in full, which is simply no tender at all. A tender to be good must be unconditional. This is elementary. The treasurer had no authority to receive the money with such condition attached. (*State* v. *C. P. R. R. Co.*, 9 Nev. 79.) The bank should have paid the entire tax, and then brought suit to recover the portion alleged to be illegal. The plea of partial tender is not one of the defenses allowed by the statute. (2 Comp. L. 3156.)

By the Court, Leonard, C. J.:

The Carson City Savings Bank is a corporation duly incorporated under the laws of this state. The state recovered

judgment for one thousand three hundred and forty-five dollars and fifty cents, on account of taxes alleged to be due for state, county and city purposes, for the year 1880, together with thirty-five per centum penalties for non-payment at the time required by law. The property assessed consisted of real estate, bank furniture, money in bank and money at interest, secured by mortgage upon real property. It is alleged in the answer that "the said several sums of money described in the complaint as 'money at interest secured by mortgages,' were savings deposits in the bank of defendant, and the said several sums of money were the property of the respective persons who deposited the same in said bank of defendant, and were, by the revenue law of this state, taxable to said depositors and not to this defendant." Before the tax became delinquent, and after the assessment roll had been delivered, according to law, to the county treasurer and ex-officio tax collector of Ormsby county, defendant tendered to the treasurer, in full payment of all its taxes for the fiscal year 1880, six hundred and sixty-nine dollars and fifty cents, the amount admitted to be due, and the whole amount claimed, as taxes upon all of defendant's property for that year, except money at interest secured by mortgages. The treasurer refused to accept that sum in full payment, and thereupon defendant deposited it, as before stated, with the treasurer, with instructions to apply the same to the payment and satisfaction of all its taxes for the fiscal year 1880. But to do so the treasurer refused, and said sum has since then remained in his hands as an unaccepted tender.

Four grounds of error are relied on :

1. It is said that, by the express terms of the statute, mortgages are not taxable, and that the use of the word "mortgages" in the exempting statutes (Stat. 1877, p. 175, and 1879, p. 111,) was intended to cover "money at interest secured by mortgage."

By section 4 of revenue statute of 1865 (p. 273) it was provided that "all property of every kind and nature shall be subject to taxation," except certain property mentioned, but neither mortgages nor money at interest secured thereby were included in the exemptions.

By section 5 money at interest so secured was then, and is now, declared to be personal property. By the statutes of 1877–79, above referred to, section 4 of the statutes of 1865 was amended, and "mortgages" were placed in the list of exempted property.

We deem it unnecessary to decide whether the legislature, by exempting "mortgages" in terms, intended to exempt money at interest secured thereby, for these reasons: if money at interest, secured by mortgage, is not taxable, for the reasons claimed, to-wit: that such taxation is double, and that credits are not property subject to taxation within the meaning of section 1, of article X., of the constitution, then this tax, to the extent claimed, is invalid under the constitution, regardless of the statutes exempting mortgages from taxation; and if, under the constitution and laws, it is subject to taxation, then the laws exempting it are void.

The sections of the constitution touching the questions in hand are as follows: Article IX., section 2: "The legislature shall provide by law for an annual tax sufficient to defray the estimated expenses of the state for each fiscal year."

Article X., section 1: "The legislature shall provide by law for a uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation of all property, real, personal and possessory, except mines and mining claims, the proceeds of which alone shall be taxed, and also excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."

It is plain that a general exemption of "mortgages," or even of "money at interest secured by mortgage," is not an exemption for any of the purposes mentioned in the constitution; and it is equally evident that the special grant of authority to exempt property for the purpose specified, carries with it an implied inhibition against an exemption for any other purpose. (*Morrison* v. *Larkin*, 26 La. Ann. 702; *Fletcher* v. *Oliver*, 25 Ark. 294.)

Since the constitution declares that all property shall be taxed except mines and other property for certain enumerated purposes, the legislature cannot exempt any taxable property, except for the purpose stated.

2. It is also said that, under the statute to provide revenue, etc., bank deposits must be taxed to depositors and not to the bank; that the law will presume the assessor has done his duty, and has assessed all of the savings deposits of defendant to depositors, to whom they belonged; and that, to assess such deposits to defendant under the name of "money at interest, secured by mortgage," would be a glaring case of double taxation.

We think counsel for defendants are in error when they assert that, under the law, moneys deposited in the bank were assessable to depositors and not to the bank. Whether the indebtedness of the bank to depositors is taxable to the latter as solvent debts is a question that does not arise in this case.

Judgment having been taken in the court below upon the pleadings, the allegation of fact in the answer, that "the sums of money assessed were savings deposits in defendants' bank," must be taken as true; but the allegations that "they were the property of the respective depositors, and were, by the laws of the state, taxable to them and not to the bank," are allegations of legal conclusions upon questions of law which the court must decide.

There are two kinds of deposits, general and special, and the rights of depositors in relation thereto are widely different. It is everywhere conceded that "all sums paid into a bank on general deposit, by the same or different depositors, form one blended fund. As soon as the money has been handed over to the bank, and the credit given to the payer, it is at once the proper money of the bank. It enters into the general fund and capital and is undistinguishable therefrom." (*Planters' Bank* v. *Union Bank*, 16 Wall. 484; Morse on Banks and Banking, 26.)

Thereafter the depositor has only a debt owing him from the bank. He has no right to any specific money, and though the identical money deposited be stolen before it is in fact mingled with the other moneys of the bank, still the bank must make up the loss. (Ibid, 27.)

And, ordinarily, unless otherwise stated, a deposit of the current money of the country where the deposit is made will be assumed to be a general deposit. (Ibid, 56, 57.)

On the other hand, a special deposit "is the placing of something in the charge or custody of the bank, of which specific thing restitution must be made." (Ibid, 55.)

"A special deposit does not enter the general funds of the bank and form a part of its disposable capital. It is to be kept by itself and to be specifically returned. Hence, it follows that a bank can not base any increase of its issues or discounts upon such unavailable deposits. They are in no sense at its disposal, and it can in no manner (unless there be a special, extraordinary and peculiar arrangement) reap any advantage or profit, direct or indirect, from the simple custody of them. They are not part of its money." (Ibid, 58. See McLeod's Elements of Banking, 241; Perry's Elements of Political Economy, 345; *Lilly* v. *Commissioners*, 69 N. C. 302; *Marine Bank* v. *Fulton Bank*, 2 Wall. 255.)

The fifth subdivision of section 4 of the statute of this state, entitled "An act to provide for the formation of corporations for the accumulation and investment of funds and savings" (C. L. 3526), empowers a corporation formed thereunder, as one of its corporate acts, " *To loan and invest the funds of the corporation; to receive deposits of money and to loan and invest the same; to collect the same with interest, and to pay such deposits without interest, or with so much of the earnings and interest as the by-laws of the corporation may provide.*" See, also, sections 11, 13, 16 and 24. Besides, the answer shows that the moneys loaned in this case were savings deposits, and they were loaned by the bank in its own name, and as its own property.

There can be no doubt that, under the statute, these deposits, received in the regular course of the bank's business, became its own property, and that, thereafter, the relation of debtor and creditor existed between the bank and its depositors. Such being the case, there can be no doubt that the defendant was properly assessed, if money at interest, secured by mortgage, is property subject to taxation.

It is said in *Burke* v. *Badlam*, Pacific Coast Law Journal, vol. 7, No. 16, p. 575, that "between the bank and depositor the ordinary relation of debtor and creditor does not exist;"

but the civil code of California (sec. 579) provides that "receiving deposits, issuing certificates of deposit, checks, and bills of exchange, and the like, in the transaction of business of savings and loan corporations, must not be construed to be the creation of debts within the meaning of the phrase, 'create debts,' in section 309;" and the latter section provides that "the directors of corporations  *  *  *  must not create debts beyond their subscribed capital stock," except as thereinafter specially provided.

We have no such statute, and the relation of debtor and creditor does exist between general depositors and banks. But even in California, although that relation is declared not to exist, all moneys deposited in savings banks must be assessed to them, and not to depositors. (*Burke* v. *Badlam, supra.*)

3. It is next said that any taxation of mortgages, or money at interest secured thereby, when the property mortgaged is taxed, is double taxation and in violation of our constitution; and in support of this proposition, *Savings and Loan Society* v. *Austin*, 46 Cal. 415, and *People* v. *Hibernia Bank*, 51 Cal. 243, are mainly relied on.

The other cases cited are not at all in point.

The questions here presented are important, and must receive the consideration which the subject demands.

It must be borne in mind that we are to consider, merely, whether or not the legislature had the *power* to tax money at interest secured by mortgage. With the *policy* of such a law we have nothing to do. If the power existed that is the end of the question. We must also remember that the legislature had authority so to do, unless its exercise was plainly inhibited.

The statute requires, in terms, that money at interest secured by mortgage be taxed according to its value, like other property; and the constitution sustains the statute, if this money, or the right to collect the indebtedness secured, is *property*, in the constitutional sense; and such it is, if its taxation, as well as the property securing it, is not a double taxation of the mortgaged property.

Although the constitution might have required one kind of property to be taxed twice, while all other kinds should be

taxed once, yet such a requirement would have been inequitable; and our constitution does not permit taxation to extend beyond *equal taxation of all property*. It follows, therefore, that a part cannot be taxed twice, and the balance but once, in the same year.

We must ascertain, then, whether the legislature, in providing for the taxation of money at interest secured by mortgage, followed the constitutional command that it should "provide, by law, for a uniform and equal rate of assessment and taxation," and should "prescribe such regulations as shall secure a just valuation for taxation of all property, real, personal and possessory," with certain exceptions that do not touch this case.

In order to solve this question in favor of the validity of the law, we must find that the word "property," as it is used in the constitution, includes, and was intended to include, money at interest secured by mortgage; and in order to so find, we must also be convinced that its taxation is not in any proper sense double taxation of the property mortgaged.

After a careful reading of the constitutional debates, we are driven to the conclusion either that the taxation of secured demands, and also the property securing them, is not double taxation, or that the framers were, in fact, ignorant of the law upon the subject; because, that there was no intention of imposing double burdens upon any species of property we have no doubt, and we feel confident that the framers did intend to tax both money and security, if both are property. They intended to tax *all* property once each year.

From 1861 until the adoption of the constitution, "all property of every kind whatsoever" was taxable, with certain exceptions, which did not include money at interest secured by mortgage; and the term "personal property" was declared to mean and include, for the purpose of taxation, * * * "all money at interest secured by mortgage." That was the law in force when the constitution was adopted, and, too, so far as we are able to ascertain the facts, such was then the law in all or nearly all of the sister states, and it was universally upheld by the courts.

Besides, in the schedule of the constitution (art. XVII., sec.

2), it was provided that "all laws of the territory of Nevada in force at the time of the admission of this state, not repugnant to this constitution, shall remain in force until they expire by their own limitation, or be altered or repealed by the legislature." The intention of the territorial revenue law, as well as the one now in force, was to impose equal and uniform taxation. It was not enacted with the idea of imposing double taxation, but the theory was that a present legal right to demand a sum of money in the future was property subject to taxation, as well as the property securing it. When the constitution was framed and adopted, then, as before stated, the law in force required the taxation of both money and security; and we have a right to presume that the law was enforced. Still, the words "all property" were used in the constitution as they had been in the revenue law then in force, and they were so used in the face of the statute defining "all property;" but no provision was made for the exemption of either the money or security.

. The proposition that a secured demand is property is too self-evident to require argument or authority. It is thus considered and treated by every writer upon political economy, by all law writers, by all courts, by the whole commercial world. Credits are everywhere subjects of garnishment and execution, of purchase and sale.

Mr. Felton, in his very able brief in the Savings and Loan Society case, *supra.*, says: "The proposition upon which we rely to show that a tax on solvent debts is unconstitutional is this: that solvent debts are a species of property which, under the system of taxation adopted in California, is taxed under another name, and, consequently, cannot be again taxed. *We concede fully that solvent debts constitute property*, and under a different system from that adopted in California, can be taxed, under the name of solvent debts, to the creditor or person who owns them." In that case the court decided that solvent debts were property, within the meaning of the word as used in the constitution, and were liable to taxation. Such was the conclusion, also, in *People* v. *Ashbury*, same volume, 527; and see *People* v. *McCreary*, 34 Cal. 432; *People* v. *Whartenby*, 38 Cal. 461; *People* v. *Eddy*, 43 Cal. 331, and *Lick* v. *Austin*, Id. 590.

In the Savings and Loan Society case Mr. Justice Crockett said : "As already stated, it has been settled by the decisions of this court that a solvent debt is property in the sense of the constitution, for the purpose of taxation, and a solvent debt for money lent, secured by mortgage, stands upon the same footing with other solvent debts, unless it can be demonstrated that a tax on the mortgage debt is, in effect, a tax on the property mortgaged; and if each be separately taxed there will be a double taxation of the same value or subject matter."

In *People* v. *Eddy* the action was to recover taxes upon solvent debts due upon promissory notes secured by mortgage on real estate; still it was decided that a solvent debt was property, and could not be exempted from taxation by the legislature; that the word " property" was used in the constitution in its ordinary and popular sense, and included not only visible, tangible property, but also choses in action, such as solvent debts secured by mortgage. We fully agree with the above conclusions, as well as with those of the supreme court of Alabama, in *Alabama Gold Life Insurance Company* v. *Lott*, 54 Ala. 505, where it is said: " We have not overlooked the argument of counsel for appellant, that the credits of the company secured by mortgage on lands that are taxed are not themselves taxable, because this would be duplicate taxation, and we have examined the interesting case to that effect, referred to us in support of the argument, in which the supreme court of California held that such taxation was prohibited by the constitution of that state. But why do counsel restrict the proposition to credits secured by mortgages of property ? If a credit not so secured might properly be taxed, the fact that there is a mortgage to support it does not render it less fit to be taxed. It would seem that it should be more so, because the value of it is thereby made more definite and stable, while in either case the debt must be paid out of the taxed property of the debtor. The reasoning on the subject, and the case cited also, go, as they logically must, to the extent of maintaining that taxes should not be imposed at all on a mere credit, a *chose in action*, a thing in right but not in actual possession, because such credit must be paid in money or some other tangible property which is taxed." In the

Alabama case the court held that a statute taxing credits secured by mortgage, did not violate a provision of the Alabama constitution declaring that "all taxes levied on property in this state shall be assessed in exact proportion to the value of such property."

As we understand the decision of the majority of the court in the Savings and Loan Society case, it recognized as settled, that solvent debts *unsecured* were subject to taxation as the statute provided; but it was also held that a debt for money loaned, which was secured by mortgage, could not be taxed to the creditor, if the mortgaged property was also taxed, for the reason that if the debt is taxed the mortgagee will add the tax to the interest when he makes the loan, and the result will be that the mortgageor will have to pay the tax on both the money loaned and the mortgaged property, which it was held would be double taxation.

Mr. Justice Crockett, speaking for the court, said: "A tax on loans made in the usual course of business is paid by the borrower, and if the debt be secured by mortgage, he also pays the tax on the mortgaged property. He is twice taxed—once on the property and once on the debt which the property represents, and yet no new value has been created by the transaction."

Mr. Justice Rhodes fully answered that argument when he said: "It was earnestly urged by counsel that the debt for money loaned should be exempt from taxation, because the taxes must, by the inevitable operation of the rules of trade, be paid by the borrower. Under the operation of the same rules, the consumer pays the tax imposed on all merchantable commodities, and the tenant pays the taxes directly or indirectly on the leased premises. Would that result be urged as a sufficient reason for exempting from taxation all merchantable commodities and all lands held under lease? Does the fact that the borrowers from the bank pay indirectly the taxes on the bank building afford sufficient reason for exempting such building?"

It must be admitted that it is just as unconstitutional to compel A to pay not only his own taxes, but B's also, as it would be to tax his property twice. There is the same lack

of equality and uniformity in one case as in the other; for all must agree that equality of burden is the great cardinal principle of the constitution upon the subject of taxation. We recognize the well-established principle that the law does not permit the doing of anything indirectly which cannot be done by direct means.

But we are aware, also, that absolute uniformity and equality of taxation in the practical operation of a revenue law can never be attained, and it was not intended by the framers of the constitution. "It is never within the scope of human law to embrace distant and contingent consequences. The connection between cause and *ultimate* effect is an endless chain." (*Coite* v. *Society for Savings*, 32 Conn. 188.)

If a law could be declared unconstitutional because its *ultimate* effect is, in some or many instances, unequal or not uniform, revenues would not be collected and governments could not exist. There is just as much remote inequality in relation to taxation of tangible property as there is in the taxation of credits. It would be difficult to give one good reason why a man who sells his store and goods, or his farm and stock, and invests his money in securities, ought not to bear his just proportion of the public burdens; and it cannot be denied that if he does not so there is an unjust discrimination in favor of a class that is already strong. He is protected by the laws in his person, and their aid may be invoked at any time to enforce payment of his demands. The courts are open for his benefit, just as they were when his property consisted of store or farm. He can go into the market and sell his paper for money, or exchange it for other property. He not only ought to be taxed like his neighbors, but under the law requiring the taxation of his secured demand, he, and he alone, is taxed, although the indirect result of his taxation may be to impose an additional burden upon the mortgageor and others. If a demand secured by mortgage is property, as it is everywhere conceded to be, how can it escape taxation under the constitution, even though the indirect result thereof in certain cases is to compel the payment of a higher rate of interest by the mortgageor? Are courts going to attempt the herculean task of correcting all the inequalities that must

inevitably arise in the practical operation of the best revenue law that the wit of man can devise ? In taxing credits, secured or otherwise, the legislature did not *intend* to place an additional burden upon the debtor class. In other words, the object of this provision was not to tax *them*, or to derive revenue from *their* estates, although it may be presumed the legislature knew that, in many instances, such would be the result. But, because the indirect result of taxation is to make one person, in the first instance, pay the taxes of another, is that a sufficient reason for saying that all property shall not be taxed ? If that was the law, our revenues would be small, indeed. Let us see. We have said that double taxation is not permitted, but we have seen, also, that A cannot be compelled to pay the taxes of B. If that could be done, equality and uniformity would be destroyed. Hence, a law which indirectly compels A to pay the taxes of B, although the relation of debtor and creditor does not exist between them, is just as unconstitutional as it would be, if that relation did exist. The constitution requires each person to pay his own taxes, and not those of other people. If we are correct in this, let us see where the doctrine contended for by defendant leads us.

A loans B one thousand dollars and takes a mortgage on the latter's farm. B must pay taxes on the value of his farm, notwithstanding the incumbrance, because it is property subject to taxation. But, it is said, A must not be taxed, because, if he is, B will have to pay the taxes in the form of an increased rate of interest. In other words, B will have to pay not only his own taxes, but A's also. But, so far, A and B are the only persons affected. Let us advance a step. There are other taxpayers, a very large class, who have an interest in this question; persons owning property who are not in debt. They have a right to say that A's property, profitable and valuable to him, ought to bear its proper share of the public burdens; because, if that is not taxed according to its value, as well as B's, their taxes must be increased. Should A go untaxed, they would have good cause of complaint—certainly a much better cause than A has, whose argument against being taxed is based upon an admission that he has received from B the amount of the tax over and above the current rate of interest.

So, in avoiding Scylla, we inevitably encounter Charybdis. If a secured demand cannot be taxed. for the reason stated, then, as is said by Judge Cooley, in reference to the Savings and Loan Society case, "this reason, if applied universally to indirect taxation, would keep the boards very busy in correcting the inequalities of tax legislation." (Cooley on Taxation, 159, note.)

By the same course of reasoning a railroad company cannot be taxed, because, by reason thereof, every person who rides a mile or ships a pound of freight, is charged more than he otherwise would have been. Nor could a merchant be taxed on his goods, because he must add the tax to their cost and make his profit besides, and purchasers must pay the whole. These examples might be extended indefinitely, but enough have been mentioned to indicate the difficulties that would beset the state if, because of inequalities arising indirectly from taxation, the law imposing the tax must be declared unconstitutional.

In relation to the extreme examples mentioned by the court in the California cases relied on, we have only time and space to say this: Our constitution prescribes rules, mainly, for ordinary conditions. It recognizes the fact that extraordinary emergencies may arise, and makes provision therefor; but it was not intended that its ordinary meaning should be arrived at, from the standpoint of imaginary and improbable circumstances. The state may contract debts beyond the amount fixed in the constitution, for extraordinary expenses. It may repel invasion, suppress insurrection, and provide for public defense, if hostilities are threatened; but those are exceptional cases, and in its general operation the intention was that the constitution should receive its natural and usual construction, rather than one which, at the sacrifice of justice, is based upon possible, but improbable, emergencies.

In reply to the argument that the borrower pays the tax, it may be said: Although it is true, in a general sense, that in the loaning of money, as in the sale of goods, the borrower in the first case, as well as the purchaser in the last, pays the tax indirectly. Yet this is by no means *necessarily* true. Except

in cases of extreme necessity, there is a natural limit to the rate of interest. Mr. Mill says: "The utility of a thing in the estimation of the purchaser is the extreme limit of its exchange value." (Principles of Political Economy, vol. 1, p. 545.) And again: "The monopolist can fix the value as high as he pleases, short of what the consumer either could not, or would not, pay; but he can only do so by limiting the supply." (p. 552.)

"Every rise in the rate of interest tends to lessen the demand of borrowers, and every fall, to enhance that demand, and thus every rise and fall of interest tends to check itself." (Perry's Elements of Political Economy, p. 298.)

Now, if there are more lenders than borrowers, the former, if they can do no better with their money, will seek loans at the current rate, without adding the tax; while, if money is scarce, or if the demand exceeds the supply, borrowers will pay the amount of the tax, in addition to the current rate, up to a point beyond which a loan, at such rate, is not useful or desirable. If the current rate, without the tax, reaches that point, the lender must be satisfied with that rate, less the tax, or he cannot loan his money. So it does not *necessarily* follow, if a tax is imposed upon the lender, that the borrower pays it directly or indirectly. Consequently, it seems to us, to *presume* that the interest paid by the borrower exceeds what he would have paid, if no tax had been imposed on his credit, to the extent of the tax, is pushing the doctrine of presumption beyond its legitimate limit.

It may be that in this case the borrowers are paying no higher rate than they would have paid if no tax had been imposed upon the money loaned. It may be that non-residents, who are not taxed, were loaning money freely when these loans were made, and that the bank was compelled to submit to the loss of the tax in order to secure the loans.

How, then, can courts say, in this case, that there has been double taxation for the reason claimed, even though they could say so, if it appeared that the mortgageors had indirectly paid the taxes assessed to defendant?

Of course, if money at interest secured by mortgage is not property subject to taxation, as the court held in the Hibernia

Bank case, then any law taxing it is unconstitutional, no matter who pays it; but if it is property and taxable, as against the mortgagee, which we hold to be true, then when called upon for his taxes, before he could interpose the objection of unconstitutionality, even upon defendant's theory, the mortgagee would have to show either that, in every case, the inevitable result of taxing the money is payment thereof by the mortgageor, or that in the case in hand such was the result.

Adam Smith, in his "Wealth of Nations," laid down four maxims in relation to taxation, the wisdom of which has been, and is, conceded. A part of the first is as follows: "The subjects of every state ought to contribute towards the support of the government as nearly as possible in proportion to their respective abilities; that is, in proportion to the revenue which they respectively enjoy under the protection of the state."

We have no doubt that our constitution was framed and adopted upon that principle. For the state's protection of person and property all were to be taxed according to their respective ability to pay, and the value of their property, within the state, was selected as the fairest test of ability.

We find nothing in the constitution justifying the conclusion that tangible property alone was intended to be, or can be, taxed.

We do not think either of the two cases decided by the supreme court of California, referred to by defendant, declares the law. They are opposed to the previous decisions of the same court, and it is evident that the framers of the new constitution of that state, and the people who adopted it, did not think the taxation of credits was double taxation, and that they did consider them property. We are unable to find any law writer who commends those decisions. Judge Cooley refers to the Savings and Loan Society case with evident disapproval. So, also, does the supreme court of Alabama, in *Alabama G. L. Ins. Co.* v. *Lott, supra.* At least, we conclude that that case was referred to by the Alabama court instead of the Hibernia Bank case, because the Alabama case was decided at the December term, 1875, and the Hibernia Bank case was not decided until the January term, 1876.

The decision in the last named case is disapproved by Mr.

Burroughs, in his work on taxation (p. 59), in language that cannot be misunderstood.

It is referred to with disapproval by the supreme court of Louisiana, in *City of New Orleans* v. *Mechanics' and Traders' Ins. Co.*, 30 La. Ann. 876.

In that case the court said: ''The argument by which it is attempted to be shown that notes, bills, bonds, stocks, etc., are *not property*, is too sublimated and metaphysical to be practical in matters of legislation. If they are not property, they represent value and produce revenue. But to say that our constitution forbids them to be considered as property would be to expunge from our codes provisions and principles that are as old as the civil law. * * * Is it not rational, in seeking the meaning of the word 'property,' in the constitution of 1868, that we ascertain what has always been its acceptation in our law, in our jurisprudence and by common usage? And when we ascertain that, from time immemorial, 'incorporeal things,' of the kind in question, have been held and treated as embraced in the term 'property,' shall we turn our back on all this and run away after the metaphysical abstraction that 'property' is always, and of necessity, a physical actuality? * * * We think it is better and safer for capitalists that we adhere to the old landmarks and treat them as 'property-holders,' in duty bound to contribute, like other people, in proportion to their means and the protection accorded them, to the expenses of the government.''

The authorities in favor of the same doctrine are so numerous that we shall not attempt to cite them. Suffice it to say that, so far as we are informed, they embrace every case upon the subject except the two from California. If there are other exceptions, a somewhat extended research has not revealed them.

In addition to the authorities cited, see *Coite* v. *Society for Savings*, 32 Conn. 187; *Commonwealth* v. *The People's Five Cent Savings Bank*, 5 Allen, 436; *The Champaign County Bank* v. *Smith*, 7 Ohio St. 54.

4. But one other question demands consideration, and that is, whether defendant, the bank, is liable for penalties upon the tax admitted to be due? That it cannot escape payment

of those imposed for non-payment of the taxes due upon the money at interest, secured by mortgages, follows from the conclusions before reached.

The facts are these : There were due one thousand three hundred and forty-nine dollars and fifty-eight cents. Defendant tendered six hundred and sixty-nine dollars and fifty cents in full payment and satisfaction. The tender was made on condition that it should be received in full satisfaction. Certainly the county treasurer had no authority to receive the money with that condition attached. If defendant's theory of the law had been found correct, the tender would have been sufficient. But the law being otherwise, the tender of a part, made on condition that it be received for the whole, does not relieve defendant from the payment of the entire penalties. To make a tender valid it must be so made that the party refusing it is in the wrong. Here the treasurer was right, because he could not comply with the condition imposed without disobeying the law. Penalties might have been avoided by paying the entire tax under protest, and then bringing an action against the treasurer to recover the portion alleged to be illegal. But another course was taken, and the result is as before stated.

The judgment is affirmed.

By BELKNAP, J., concurring:

Under constitutional provisions requiring taxation to be equal and uniform, a large number of our sister states have pursued the same general system of taxation of credits as has been adopted by the legislature of this state. This system had been uniformly upheld by judicial decision down to the time of the adoption of our constitution. Aside from this, the constitutional clause had received a practical construction of great force by long acquiescence in the taxation of credits and a general adoption of the system throughout the union.

These considerations warrant the presumption that the convention which framed, and the people who ratified, the constitution, understood the taxation clause in the sense in which it was then judicially and practically interpreted and intended it in that sense.

For that reason I concur in the judgment of the court.